IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| PB and Associates, Inc., | ) | |
| | ) | **ORDER DENYING MOTION** |
| Plaintiff, | ) | **TO DISMISS AND IN THE** |
| | ) | **ALTERNATIVE FOR RELEASE** |
| vs. | ) | **OF LIS PENDENS** |
| | ) | |
| Bakken Group, Inc., | ) | Case No.: 4:14-cv-00005 |
| | ) | |
| Defendant. | ) | |

Before the court is a motion to dismiss by defendant Bakken Group, Inc. or, in the alternative, for an order expunging a Notice of Lis Pendens. For the reasons set forth below the motion (Doc. No. 6) will be denied.

I. **BACKGROUND**[1]

Plaintiff PB and Associates, Inc. ("PB") and defendant Bakken Group, Inc. ("Bakken Group") entered into a non-binding Letter of Intent ("LOI") on October 25, 2013, which stated that the mutual intent of the parties was to form a Montana limited liability company ("LLC") to establish, own, and operate a private waste water treatment plant on a specifically-identified 189 acre tract in Williams County, North Dakota, in or near the City of Williston. The LOI stated, among other things, that the intent was that the Bakken Group would convey the subject property to the LLC to serve as its 80% contribution and ownership share and PB would contribute a 20% cash equivalent for its 20% ownership share.

---

[1] The facts are from plaintiff's complaint and its attachments given the preliminary nature of the motions.

1

Following the execution of the LOI, a third party - Burning Run LLC ("Burning Run") - got involved in the proposed project. On October 29, 2013, the Bakken Group, PB, and Burning Run entered into a Memorandum of Understanding ("MOU") for the development of the "NextGen Sewer Treatment Plant."

As did the LOI, the MOU provides for the development of a private waste water treatment plant on a 189 acre tract in Williston, North Dakota, to be owned and operated by an LLC to be formed by the parties. The MOU purports to spell out: (1) the ownership interest of each of the three parties in the LLC; (2) the initial capital contributions of each member; (3) the identities of the two persons who will serve as managers of the LLC; and (4) certain additional "representations and warranties" that provide some outline for the project and its financing. The MOU then goes on to state:

> The Parties agree and acknowledge that this MOU is legally binding, and it is an enforceable agreement between the parties hereto with respect to the provisions herein, and that it will inure to the benefit of the Parties and their respective successors and assigns.
>
> The Parties hereby agree use [sic] their respective best efforts to negotiate in good faith and with all deliberate speed to enter into an Operating Agreement for WNTF, LLC and all additional agreement(s) that incorporate the essential terms, conditions, and constitutive elements in this MOU. The Parties agree to use their respective best efforts to execute such Operating Agreement and other agreements within fifteen (30) [sic] days of the execution of this LOI [sic].

PB filed its complaint in this action on January 10, 2014, suing only the Bakken Group. Attached to the complaint are copies of the LOI, a document containing certain financial projections, and the MOU. Following a recitation of some of the background facts, the complaint alleges:

21.
Significant time and resources were spent on preparing to successfully pursue the joint venture. Plaintiff and other partners made a total of five trips to meet with

2

>Defendant and expended additional resources on discussions with attorneys in anticipation of entering into the Operating Agreement and developing the Property.
>
>22.
>Subsequent correspondence from Gary Chilcott (hereinafter referred to as "Chilcott"), President and Chief Executive Officer of Bakken Group, Inc., indicated that Defendant would be regrouping and reconsidering its plan for the waste water treatment plant and another project, citing the interest in securing fair financing with experienced partners.
>
>23.
>Further correspondence from Chilcott indicated that Defendant had no intention of honoring the MOU, that it had merely been a first step, and that when he signed it he had said if it was not in their best interest they would not continue.

The complaint then goes on to allege two causes of action, both of which are claims for breach of contract. The first claim requests specific performance, including the formation of the LLC and the conveyance of the 189 acre tract to the LLC by the Bakken Group. The second claim is for damages, both past and future.

## II. DISCUSSION

### A. Bakken Group's motion to dismiss

The Bakken Group moves to dismiss the complaint for failure to state a cause of action pursuant to Fed. R. Civ. P. 12(b)(6). The Bakken Group's argument is that the complaint does not state a claim because, according to it, the MOU attached to the complaint is only "an agreement to agree" and not an enforceable contract.

The mere fact the MOU contemplates further agreement does not mean it is unenforceable, however. E.g., Stout v. Fisher Indus., Inc., 1999 ND 218, ¶ 12, 603 N.W.2d 52 ("[A]n agreement to agree is enforceable if its terms are reasonably certain and definite."); Kuntz v. Kuntz, 1999 ND 114, ¶ 14, 595 N.W.2d 292 (enforcing purported "agreement to agree" by specific performance).

And here, the MOU does contain some terms and expressly states it is an enforceable, binding agreement.

Given these circumstances, the court concludes the complaint does state a claim. In other words, the court is not prepared to conclude at this early stage that it is so obvious a binding contract has not been formed that a motion to dismiss would be in order.[2]

B.     **Bakken Group's alternative motion for order for release of lis pendens**

More troublesome is the Bakken Group's motion for an order releasing the lis pendens. Here, the only basis for the lis pendens is the possibility that the court might specifically enforce the agreement that the Bakken Group convey the real estate to the LLC,[3] and a cursory review suggests that PB has significant obstacles to overcome in obtaining such relief.[4] At this point, however, the court is not prepared to conclude that specific performance is out of the question. Consequently, the Bakken Group's motion for an order to release lis pendens will be denied at this

---

[2] The MOU here goes beyond a simple "agreement to agree." It expressly states it is a binding and enforceable agreement. Also, the parties have expressly promised to negotiate in good faith, which, arguably, would not otherwise be required under North Dakota law. Cf., e.g., Macquarie Bank Ltd. v. Knickel, 723 F. Supp. 2d 1161, 1193 (D.N.D. 2010); WFND, LLC v. Fargo Marc, LLC, 2007 ND 67, ¶ 17, 730 N.W.2d 841 ("[i]n North Dakota the doctrine of an implied covenant of good faith and fair dealing has only been applied to insurance contracts.") (quoting Dalan v. Paracelsus Healthcare Corp., 2002 ND 46, ¶ 11, 640 N.W.2d 726). The court need not decide now whether the combination of these two promises (1) expands on what the court can attempt to enforce, or (2) imposes a binding obligation on the part of the Bakken Group to deal in good faith, such that, if it can be proved the promise was breached, PB could be awarded any damages that may have proximately resulted from its reliance upon the promise. See generally E. Allan Farnsworth, Farnsworth on Contracts §§ 326-326c (3d ed. 2004).

[3] See 54 C.J.S. Lis Pendens § 10 (database updated March 2014) ("A suit for specific performance is within the doctrine of lis pendens[.]"); 51 Am. Jur. 2d Lis Pendens § 45 (database updated Feb. 2014) (same).

[4] Aside from being poorly drafted, the MOU does appear to leave a lot to be decided - particularly with respect to the financing. Also, while the LOI clearly stated that the real estate was going to be the Bakken Group's contribution, the MOU appears to be ambiguous with respect to this point since it provides that the Bakken Group's capital contribution is a "$4.0M Loan Payable at Permanent Finance" and, at best, only impliedly suggests the contribution of the real estate. Finally, the court questions its ability to award specific performance when one of the parties to the agreement is not before the court.

time. In so deciding, the court rejects the Bakken Group's argument that the real estate in question was not sufficiently identified in the MOU.

**III**.     **<u>ORDER</u>**

Based on the foregoing, the Bakken Group's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and, in the alternative, for an order releasing the lis pendens (Doc. No. 6) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 9th day of April, 2014.

<u>/s/ Charles S. Miller, Jr.</u><br>
Charles S. Miller, Jr.<br>
United States Magistrate Judge